IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES PRESTON,** | : | Civil No. 1:12-CV-1047 |
| | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CITY OF YORK, YORK POLICE** | : | |
| **DEPARTMENT, DISTRICT** | : | |
| **ATTORNEY, and OFFICER PERRY,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

I. **Statement of Facts and of the Case**

A. **Preston's Complaint**

On June 4, 2012, the plaintiff, Charles Preston, an inmate at the York County Prison who was proceeding *pro se*, commenced this civil action by filing a complaint with the United States District Court for the Middle District of Pennsylvania. (Doc. 1.) In his *pro se* complaint, Preston named four defendants: the City of York, the York Police Department, Officer Perry of the York Police Department, and the district attorney. (Id.)

Preston's complaint then recited that in September of 2010 he and a female companion were attending a social event, "bike week at the White Rose Bar in York", when Officer Perry arrived at the bar responding to a complaint that a man was choking a woman. (Id.) According to Preston's complaint, Officer Perry approached

the plaintiff and his girlfriend because the officer perceived that "at the time [they] appered [sic] to be arguing," and began questioning them. A scuffle then ensued between the police officer and some of Preston's companions. (Id.) When this affray broke out, Preston alleges that he "ran . . . was caught . . . [and] was hit multiple times." (Id.) Preston provided no further explanation or context for the events which led to this flight, apprehension and altercation. However, a criminal prosecution was then apparently brought against Preston, since Preston's complaint named the prosecuting district attorney in this state case as an additional defendant, although Preston candidly acknowledged that he "can't remember [the district attorney's] name." (Id.) On the basis of these cryptic allegations, Preston then demanded punitive and compensatory damages from the City of York, the York Police Department, Officer Perry and the unnamed district attorney who prosecuted him. (Id.)

    **B.**  **We Recommended Dismissal of the Complaint Without Prejudice**

Along with this complaint, the plaintiff filed a motion for leave to proceed *in forma pauperis*. (Doc. 2.) On June 6, 2012, (Doc. 7.), we recommended that this motion for leave to proceed *in forma pauperis* be granted, but as part of our legally mandated screening process for *pro se, in forma pauperis* complaints, we recommended that the Court dismiss this complaint for failure to state a claim upon

which relief can be granted without prejudice to allowing the plaintiff to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint.

We made this recommendation because we found that Preston's *pro se* complaint ran afoul of several threshold legal obstacles, obstacles which combined to compel dismissal of this complaint in its current form.

At the outset, to the extent that Preston sought to hold governmental agencies like the City of York or the York Police Department liable for alleged civil rights violations, his complaint failed to meet the exacting burden of pleading and proof required for such claims. It is well-settled that local governmental entities may not be held liable under 42 U.S.C. § 1983, the principal federal civil rights statute, for the acts of others under a theory of *respondeat superior* or vicarious liability. Ashcroft v. Iqbal, 556 U.S. 662 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Thus, to sustain a claim like the claim that Preston initially appeared to advance against these institutional defendants, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs

of Bryan County v. Brown, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted). The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404). A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'" Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'" Id. at 325 (citations omitted). Therefore, analysis of a municipal liability claim requires separate consideration of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

Preston's complaint also failed to state a claim of municipal liability based upon a failure to train officers. To state a claim in this setting, such a failure must

of Bryan County v. Brown, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted). The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404). A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'" Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'" Id. at 325 (citations omitted). Therefore, analysis of a municipal liability claim requires separate consideration of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

Preston's complaint also failed to state a claim of municipal liability based upon a failure to train officers. To state a claim in this setting, such a failure must

of Bryan County v. Brown, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted). The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404). A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'" Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'" Id. at 325 (citations omitted). Therefore, analysis of a municipal liability claim requires separate consideration of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

Preston's complaint also failed to state a claim of municipal liability based upon a failure to train officers. To state a claim in this setting, such a failure must

"amount[] to deliberate indifference to the constitutional rights of persons with whom the police come in contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Proving agency liability on a theory of deliberate indifference is an especially difficult showing for a plaintiff to satisfy where the plaintiff has alleged that insufficient training or supervision has caused constitutional violations. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). Such a showing requires that "(1) . . . lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). Moreover, the plaintiff proceeding on such a theory must establish that the agency's "deliberate conduct . . . was the 'moving force' behind the injury alleged." Reitz, 125 F.3d at 145 (quoting Brown, 520 U.S. at 404). Therefore, the need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." Horton v. City of Harrisburg, No. 06-2338, 2009 U.S. Dist. LEXIS 63428, *13 (M.D. Pa. July 23, 2009) (quoting Strauss v. Walsh, No. Civ. A. 01-3625, 2002 U.S. Dist. LEXIS 24717, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002)). Additionally, in order to recover for

municipal liability on a failure-to-train theory, the alleged failure must be "closely related to the ultimate (constitutional) injury." Woloszyn, 396 F.3d at 325.

Here, Preston's complaint simply did not make sufficient allegations which would permit a finding of institutional liability against the City of York or the York Police Department.[1]  With respect to these municipal liability claims, in order to state a valid cause of action a plaintiff must provide some factual grounds for relief, a showing which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) "Factual allegations must be enough to raise a right to relief above the speculative level." Id.  Fairly construed, with respect to the municipal defendants named in his complaint, Preston's pleadings did not even rise to the level of a formulaic recitation of the elements of a cause of action.  Nor had Preston alleged facts that would permit a finding of institutional liability on a failure-to-train theory since he has not alleged any well-pleaded facts which would permit an inference that

---

[1] In addition we noted that the police department may not be a proper institutional defendant in this action since a police department is not a "person" for purposes of §1983 and is not a proper defendant in a §1983 action. Golya v. Golya, 2007 U.S. Dist. LEXIS 58093, *29-30 (M.D. Pa. 2007) (explaining that courts within the Third Circuit have concluded that a police department is merely a sub-unit of the local government and is not amenable to suit under §1983); Wivell v. Liberty Township Police Dept., 2007 U.S. Dist. LEXIS 54306, *5-6 (M.D. Pa. 2007) (explaining that police department not subject to suit in a §1983 action).

the agency's failure to train "amount[ed] to deliberate indifference to the constitutional rights of persons with whom the [police] c[a]me in contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Indeed, as to these municipal defendants, Preston did little more than list these entities in the caption of the complaint, without setting forth any factual basis for a claim against him in the body of this pleading, a style of pleading which is plainly inadequate to state a claim upon which relief can be granted and compels dismissal of these defendants. Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.) Therefore, Preston's claims against these institutional defendants failed as a matter of law.

Moreover, Preston's complaint failed with respect to the state prosecutor named in that complaint, since Preston could not sue the prosecutor for the very act of prosecuting him. Rather, it is well-settled that a criminal defendant may not sue prosecutors for their act of filing charges against him since such conduct is cloaked in immunity from civil liability. The immunity conferred upon prosecutors for the quasi-judicial act of filing and bringing criminal charges is broad and sweeping:

> [T]he Supreme Court [has] held that state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role. This immunity extends to acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and ... presenting the State's case." Court has noted numerous public policy considerations underlying its extension of absolute immunity to prosecutors: [S]uits against prosecutors for

> initiating and conducting prosecutions "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate"; lawsuits would divert prosecutors' attention and energy away from their important duty of enforcing the criminal law; prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity; and potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." ... [T]here are other checks on prosecutorial misconduct, including the criminal law and professional discipline.

Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006)(citations omitted).

Here, we found that Preston's complaint sought to hold a prosecutor personally liable for their act of prosecuting him. Since this official was immune from personal, individual liability for any actions in bringing this criminal case against Preston, we recommended that Preston's claims against this defendant also be dismissed.

Finally, Preston's complaint suggested that he was convicted of some offense as a result of this law enforcement encounter. Therefore, at bottom, it appeared that Preston wished to bring a civil rights action premised on claims based upon his prior state criminal conviction which has not otherwise been set aside or overturned. This he cannot do. Quite the contrary, as a general matter it is well-settled that an essential element of a civil rights claim arising out of a criminal case is that the underlying criminal case must have been terminated in favor of the civil rights claimant. Therefore, where the civil rights plaintiff brings a claim based upon a state case that

resulted in a conviction, the plaintiff's claim typically fails as a matter of law. The United States Court of Appeals for the Third Circuit has aptly observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483(1994) (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305(1986) (internal quotation marks omitted)). Given this close relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." Heck, 512 U.S. at 483(quoting Carey v. Piphus, 435 U.S. 247, 257-58,(1978)). The Supreme Court applied this rule in Heck to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy ... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484. Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in Heck had not successfully challenged his criminal conviction. Id.

Hector v. Watt, 235 F.3d 154, 155-156 (3d Cir. 2000)

In this case it appeared from the complaint that Preston's prior state criminal prosecution did not terminate favorably for him, since he was in prison serving a sentence and sought to sue the district attorney who convicted him. Since "one requirement of malicious prosecution is that the prior criminal proceedings must have

terminated in the plaintiff's favor." id., without the recital of further well-pleaded facts, Preston appeared to be severely limited in his ability to pursue civil rights claims arising out of this episode which resulted in a state criminal conviction.[2]

### C. The District Court Dismissed Preston's Complaint Without Prejudice

While we recommended dismissal of this flawed complaint, we also recommended the Plaintiff's complaint be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acted within 20 days of any dismissal order. On September 10, 2012, the district court adopted this Report and Recommendation, but permitted Preston 20 days in which to amend his complaint. (Doc. 11.) Preston then requested an extension of time in which to file an amended complaint, (Doc. 13.), which we granted, (Doc. 14.), extending the filing deadline to October 15, 2012.

---

[2]In reaching this recommendation we also noted for Preston that the Supreme Court's rule in Heck v. Humphrey, 512 U.S. 477 (1994), which forbids civil rights plaintiffs from bringing civil lawsuits against government officials which would necessarily imply that a prior state conviction was invalid, would not prevent a convicted person from bringing an excessive force claim against an arresting officer. See Lora-Pena v. F.B.I., 529 F.3d 503, 506 (3d Cir. 2008). See, e.g., Garrison v. Porch, 376 F.App'x 274 (3d Cir. 2009); Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997). We then invited Preston to file an amended complaint clearly bringing such a claim if he wished, but he elected not to do so.

### D. Preston Has Failed To Amend This Complaint as Ordered by the Court

Despite requesting this extension of time Preston has unaccountably failed to file any amended complaint, and the time for filing such a complaint has now lapsed. Moreover, Preston continues to be non-compliant with his obligations as a *pro se* litigant. On these facts, we recommend that this case be dismissed with prejudice.

### II. Discussion

In this case, Preston was given this opportunity to further amend his complaint, but has now forfeited this opportunity through his inaction. In this situation, where a deficient complaint is dismissed without prejudice but the *pro se* plaintiff refuses to timely amend the complaint, it is well within the court's discretion to dismiss the complaint with prejudice given the plaintiff's refusal to comply with court directives. Indeed, the precise course was endorsed by the United States Court of Appeals for the Third Circuit in Pruden v. SCI Camp Hill, 252 F. App'x 436, 438 (3d Cir. 2007). In Pruden, the appellate court addressed how district judges should exercise discretion when a *pro se* plaintiff ignores instructions to amend a complaint. In terms that are equally applicable here the court observed that:

> The District Court dismissed the complaint without prejudice and allowed [the *pro se* plaintiff] twenty days in which to file an amended complaint. [The *pro se* plaintiff] failed to do so. Because [the *pro se* plaintiff] decided not to amend his complaint in accordance with the Federal Rules of Civil Procedure, we conclude that the District Court did

not abuse its discretion when it dismissed [the *pro se* plaintiff's] complaint with prejudice. See In re Westinghouse Securities Litigation, 90 F.3d 696, 704 (3d Cir.1996). The District Court expressly warned [the *pro se* plaintiff] that the failure to amend his complaint would result in dismissal of the action with prejudice. "[I]t is difficult to conceive of what other course the court could have followed." Id. (quoting Spain v. Gallegos, 26 F.3d 439, 455 (3d Cir.1994)).

Pruden v. SCI Camp Hill, 252 F. App'x 436, 438 (3d Cir. 2007).

Therefore, it is recommended that the complaint be dismissed as frivolous for failure to state a claim without further leave to amend.

## III.　**Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint be dismissed as frivolous for failure to state a claim, with prejudice, and this case be closed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the

record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of January 2013.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge
